I would like to reserve five minutes for rebuttal. Good morning, your honors. May it please the court. Counsel, my name is Thomas Duda. I represent the plaintiff in this case. Mr. Bayoudh's case presents a legal issue. Counsel, before we get into that, on what basis does this court have jurisdiction? Because the decision of the circuit court disposes, finally, of the issues of temporary total compensation for a period in excess of 50 weeks and medical bills in excess of $110,000. And if this case, I know the court remanded it, but the commission, the basis of the court's opinion is the commission could not revisit the issue of the terminal date of temporary total compensation, nor did the commission, according to the circuit court, have discretion to rule on the medical bills for the fusion surgery at Northwestern Hospital, which exceeded $100,000. And the argument, the 11th-hour argument presented by the defendant in this case really moots their contention that the finding of permanency, notwithstanding that this was heard under 19b, is appropriate. So you're saying that on remand the commission will make decisions that will not involve the resolution of any factual or legal issues? Is that your position? The Judge White's decision affirmed the limitation of temporary total disability compensation as being, as the period ending August 20, 2003. But that's not the question that's been asked to you. The question that's been asked to you is this order of Judge White, a final order or is it an interlocutory order? It's final as to, as to, as to Well, I mean, but it's final only as to two elements of relief. It's not final as to PPD, that's for sure. I mean, do you have orders that are final as to one element of relief but not another and call it a final order? It's final as to those issues. And since it was only heard as a 19b, obviously the determination of permanency was an error as a matter of law at the beginning. Well, yeah, but he just reversed it and sent it back, remanded it to the commission with instruction to hear evidence as to the nature and extent of the claimant's injury. Now, whether they should have heard the PPD or they shouldn't have heard the PPD is another issue. But he reversed an element of relief and sent it back in order to re-hearing on that element, didn't he? That is correct. Okay. But he affirmed Well, we understand that. But look, you can have many elements of relief and you can have an important issue of relief on some of them but not all of them. It doesn't make it a final order. Well, I understand the Court's argument. But just as I'm standing here, my feeling on all of this is I'm much more contented if this Court remands it back to the commission indicating that the determination is not final than my not appealing to this Court when I have a $110,000 medical bill at stake, having another hearing at the Workers' Compensation Commission, going back to the circuit court and having the defendant then argue the issue of TTD and medical was adjudicated by Judge White. Mr. Duda didn't appeal that order. Therefore, those two elements are now final and the only issue is permanent. We can understand that. So procedurally, if the Court wants to do that, I personally think it's a waste of time because the two major elements that the judge affirmed are huge elements that involve hundreds of thousands of dollars. And the cases that were cited by the I'm aware of those cases. And I'm aware that this Court has discretion as to how you handle the finality of a remand order from the circuit court. No, I don't know that that's true. We're a court of limited jurisdiction. We don't have discretion when it comes to our jurisdiction. Either we have it or we don't. And there's no we have it if we want to have it. It's not a discretionary issue. It's a legal issue. Well, to some degree it is, but it's a Rule 23 case, so it's not a precedent, but it's before this very panel. And don't tell us about it, because you're not supposed to cite it. I'm not citing it. I'm just saying procedurally. Well, you may see it on the website in the future. So I do understand it's a question of law, and I didn't mean to give the impression that it's discretionary. But when the issues are finally determined and there's nothing left for the Commission to do, I believe that the cases cited both by the defendant and by myself in the brief stand for the proposition that is an appealable order and that actually appeal is necessary. What did the judge mean when he said the issue of permanency is remanded back to the Commission to hear evidence of the nature and extent of petitioner disability? What did he mean by that? He meant that the Commission would hear evidence as to the permanent disability, but not hear evidence with regard to its previous order, which was then final on TTD and medical bills. What case? Do you have a case that says you can appeal final partial without appealing all of it? The three cases that I cited in my brief, I believe, stand for that proposition, in my reply brief. I didn't raise that issue. That issue was first raised by the defendant in their brief to this Court. They didn't file a motion to dismiss. And, of course, the Court should be aware that there's a cross-appeal on file in this case. And if you grant their relief, I assume that means that you have to dismiss the cross-appeal as well. Which does bring us to the issue of the appropriateness of a permanency hearing. I think that Thomas stands for the proposition that the petitioner controls it. I think the record is clear. We attached a copy of the record, a copy of our motion for a 19-B hearing as an appendix to our brief. So the finding of permanency was totally inappropriate. Which brings us to the reversal of the arbitrator by the Commission and whether or not its final decision on TTD and medical is against the manifest weight of the evidence. In this case, the arbitrator denied compensation entirely on the premise that the injury did not cause the back disability in the petitioner and awarded no compensation. Oddly enough, the arbitrator, the circuit court, and in the brief to this Court, there is some degree of insistence that part of the reason for the lack of causation is the fact that the petitioner was treated by his family doctor before the chiropractor who started his treatment, Dr. Dabbaugh. Those records weren't produced and somehow that's fatal. I cited this in my brief and I just have, because this keeps coming up in this case, on page 131, my client was asked, you didn't see your family doctor at any time from the time of this alleged incident until today's date. Answer, yes, ma'am. So why this keeps coming up is unclear to me, but I want to make it clear to this Court, all the records were presented to the arbitrator. The first and only doctor at Galilee Medical that the petitioner saw was Dr. Dabbaugh and somehow the suggestion that the petitioner was hiding something and that calls into question his credibility is totally, in my opinion, erroneous. Basically, this is a young man, he's a 36-year-old petitioner. He had an undisputed low back injury where he slipped and fell on icy conditions in the tractor trailer of a truck where he was making deliveries. He had had two prior injuries to his neck. Oddly enough, the defendant continually asserted at arbitration, cross-examined the orthopedic surgeon who eventually fused him on the basis that Mr. Bayoud had a prior low back injury, which was not supported by the record. But the odd thing about his priors is his low back was examined on both of those occasions two years before this accident and the doctors, Dr. Kornblatt and Dr. Zelbe, found that his low back was completely normal and there were no abnormalities in it. As of March 4th, there were findings of disc bulging at L4, L5, L5S1 with stenosis in the canal. This gentleman was injured February the 25th. He was on light duty, no matter what the brief of the defendant says, he was on light duty from Tuesday until Saturday, and you should look at page 134 of the record. He went to Dr. Debye. He was treated conservatively. An MRI was ordered. He was referred to Barry Ring. He was given a series of epidural injections. And then he was examined on August 20th by Dr. Wainer, all right, who opined that this was simply a back strain. Her examination was before referral to an orthopedic surgeon. Mr. Bayoud had not seen Michael Hock at the time of this examination. It was before Dr. Hock ordered a discogram and, more importantly, a post-discographic CT scan, which was performed October the 5th, which disclosed annular tears at L4, L5, L5S1 and led Dr. Hock on October 30, 2003, to prescribe lumbar fusion surgery. Dr. Wainer could not opine on the necessity for the surgery. She did not have the test. The test didn't exist. And Dr. Hock testified extensively that a post-discographic CT scan is the most sensitive radiological test for determining an annular tear. Dr. Hock scheduled surgery. The reason it took so long to schedule it is that I had noticed up a 19B hearing to get this determined under 19B in January of 2004. The hearing started sometime in April of 2004, but we never, we initiated the hearing eventually, but by the time we approached August, it was felt that we might as well take Dr. Hock's evidence deposition so we would have his opinion in the record on the need for the surgery. Oddly enough, the Workers' Compensation Commission reversed the arbitrator. They found causal connection, but notwithstanding their finding of causal connection, they denied further TTD after August 20, 2003. And I cited to this Court the two recent Supreme Court opinions in Wade and the Retirement Board of the City of Chicago. The existence of one does not protect the profferer of that exhibit from reversal. And the case of Wade was a much stronger case than this one. In Wade, Police Officer Wade had two prior surgeries and a month before he was found disabled, he was getting treatment for his knee. In this case, Mr. Bayoud never had a problem with his low back, was examined twice before the injury, and his back was found to be normal. So the reversal... But of course, in this case, didn't you have competing medical opinions? There's only one opinion that would support the respondent. That's Wehner. And Wehner's opinion does not have, doesn't have foundation. So I couldn't have... She doesn't have foundation. She didn't have the diagnostic studies. So as a matter of law, the Commission could not find that opinion more credible. Is that what you're saying? Yes. Okay. Interesting. All right. I appreciate the Court's attention. I do reserve... I won't use five minutes. Thank you very much. Counsel, please. Counsel, before you go on too far in your argument, I notice in your brief, it is your position this Court does not have jurisdiction over this appeal. Is that correct? It is, Your Honor. And I acknowledge, and Mr. Duda suggested that that may deprive the Court of jurisdiction over our cross-appeal, and I acknowledge that that is in fact the case. It gives me no pleasure to suggest that this Court doesn't have the jurisdiction to address that. But I think as an officer of the Court, it is an obligation of mine and an obligation certainly of a reviewing panel to examine its own jurisdiction. And I think if this Court looks to the order that Judge White entered and the specific relief that he granted, that deprives this Court of jurisdiction by making the order an interlocutory one and not a final appealable order. What is left to be decided upon remand from Judge White's order is just this. The issue of permanency is remanded back to the Commission to hear evidence of the nature and extent of Petitioner's disability. And this Court held in the Pace Bus Company case, cited in our brief, that when a circuit court reverses a decision of the Commission in whole or in part, that's crucial to some of this Court's questions, Mr. Duda, in whole or in part and remands the matter back to the Commission for further proceedings involving the resolution of questions of law or fact, the order is interlocutory and not appealable. And that description fits this case to a tee. Exactly what Judge White did in this case was to remand the case back to the Commission in part for a finding, for a hearing, for the hearing of evidence on a specific disputed question of fact, the permanency of the Petitioner's injury. That finding by itself makes the order that Judge White entered an interlocutory order and therefore not appealable. In fact, none of the cases that the Petitioner cites for the contrary proposition suggest anything different. What those cases say, in fact, of the three cases, all of them acknowledge that there are situations where there might be an appealable order in those circumstances, but only if what is left to be decided in the Commission is something purely a matter of calculation or something that is undisputed. In fact, two of those cases found there was no jurisdiction. And the third found that, in the third, the Supreme Court elected to exercise jurisdiction only because there was a matter of calculation involved upon remand. So when there is something that no one can reasonably argue about to be decided on remand, then the Court can exercise jurisdiction, but not when something as significant and substantial as the issue of permanency is involved. The cases that found no jurisdiction found things such as the determination of attorney's fees still to be decided on remand was something that did not permit the order to be appealed, because it was substantial enough that there was still enough to be decided and resolved and litigated in the Commission that what was, that what had been decided so far was not appealable. Now, the fact that there are some things that by themselves might have been final and appealable does not mean that the order is still nonetheless appealable if there are aspects of it that are in the case. Apart from the jurisdictional defect in the Petitioner's case, if this Court were to have jurisdiction in this case, it should nonetheless affirm the Commission's decision and the decision of Judge White to affirm that decision, because they are not against the manifest witness of the evidence. They are consistent, in fact, with the evidence that the Petitioner's injury and current injury is something that is not causally connected to the accident he claims to have sustained. The finding of causation that has been made, the causal connection that was located in the, by the arbitrator, was the connection, or by the Commission, I'm sorry, was between the accident and the injuries that had been suffered up to the point of the independent medical examination on August 20th of 2003. The, Dr. Wainer, Dr. Julie Wainer was the doctor who conducted the IME on that date, and she determined that the Petitioner's injuries were more likely the consequence of degenerative disc disease. And it's important to think about degenerative disc disease, it's hard to say, but important to think about, because that is something that Petitioner's counsel this morning hasn't raised at all. And yet that preexisting condition, a progressive condition, a condition that all the experts acknowledge is something that is progressive and continuing and tends to build over time, was something that the Petitioner did suffer from. And Dr. Wainer went so far as to make the connection between his current complaints and that preexisting condition. What she determined was that he had reached maximum medical improvement by August 20th, 2003, the date of her examination, and that any other condition or complaint that he still suffered from at that time was attributable to something he had before. By August 20th, 2003, she found, he had reached the maximum medical improvement connected with his injuries from the accident. And that is a finding that is entitled to a great amount of deference. Certainly the lower bodies found it to be compelling, found it to be more compelling in fact, than the other experts who testified on behalf of the Petitioner. It's important also to recognize that even those other experts lent credence to Dr. Wainer's opinion. Dr. Hack, the one on which the Petitioner places most reliance, acknowledged that it's possible and likely, and I'm quoting him, it's possible and likely, that Dr. Wainer's findings may have a difference of opinion with regard to patients and their condition, their radiographic studies, as well as treatment options. So there are actually acknowledgments from the plaintiff's own evidence that there is room for debate here, there is room for dispute among professionals, and reasonable people will differ about such things. That is a far cry from the standard that is required for reversal in this case, manifest weight of the evidence. Manifest weight of the evidence requires that the opposite conclusion must be clearly evident. And Dr. Hack's acknowledgment that there is room for disagreement in these matters is a far cry from that and doesn't permit a reversal under that standard. Moreover, there was evidence in the record that the Petitioner may have been magnifying his symptoms. Dr. Wainer certainly thought so and said so in her report. There was evidence from a State Farm Claims representative that Mr. Bayoud had become belligerent about a previous denial of benefits, and there were indications from the record that he had been, he reacted badly to adverse findings. He had suggested to Dr. Wainer, in fact, that if something happened, that it would be her fault, presumably a reference to some form of litigation, perhaps an indication that he was not happy about the report she was giving him. In any event, these are all factors that contribute to the credibility issue. And Mr. Duda has made a very compelling presentation this morning. He has tried to suggest that this Court should find in favor of his client, but that is not this  The only evidence that the lower bodies came to, and the evidence that was presented by Judge White to affirm the Commission's decision, is against the manifest weight of the evidence. There is a substantial amount of evidence in this case to support that decision. And regardless of what might be said in opposition to it, what other evidence there might be out there, the finding that the lower bodies came to is consistent with the manifest weight of the evidence. If this Court has jurisdiction, I continue to maintain that it does not. But if it were to find that it does have jurisdiction, I submit it should find no reason to reverse the decision of Judge White. It should affirm Judge White's order, affirm the Commission's decision, and recognize that the Petitioner had reached maximum medical improvement at the time of his independent medical examination. Do you agree that if this Court finds no jurisdiction, that all of these issues are still alive for a later date? Of course they are. Of course they are. The fact that that is, in fact, the reason that there is no jurisdiction in this Court, because those issues are alive elsewhere and certainly remain to be litigated in the lower tribunals. I'd be happy to address any other questions that the Court might have. But in the absence of any, I've got to go. Thank you very much. Photo, please. I have just one comment for the Court. Let me ask you, your report cited the Pace Bus Company case with respect to jurisdiction. I believe the Bechtel case establishes, the Bechtel case, I was looking at my argument, and on page two of my brief, we ended with the Wilkie v. Illinois Racing Board, A.O. Smith v. the Industrial Commission, and most importantly, the Bechtel Group. Which one of those cases is best for you? Bechtel. And what was the background to that? I don't recall, to be honest with the Court. How can you stand there and tell us that it's a good story when you don't know what it means, or says? Because it was relied upon intensely to defeat a motion to dismiss, I filed in another case earlier several years ago with this very same Court. But I don't remember the facts because that case was many, many years ago. And I apologize to the Court, and I'm embarrassed. The only comment I would make is that there's no question that Mr. Bayoud had degenerative disc disease. But what led to his surgery was an annular tear. And at the time that Dr. Wehner examined him on August 20th, she didn't know, no one knew that he had annular tears at L4, L5, L5, S1, because the test that determined it wasn't conducted until October 5, 2003. That's why her opinion has no standing and cannot support a manifest way to the evidence scrutiny. Thank you. And I do apologize to the Court for not knowing the cases better. Thank you, Counsel. The Court will take the matter under advisory for dis-